IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CARLA J. SCHREIBER, | ) | CASE NO. 8:05CV537 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | MEMORANDUM AND ORDER |
| | ) | ON MOTIONS IN LIMINE |
| STATE OF NEBRASKA, and | ) | (EXPERT MATTERS) |
| NEBRASKA STATE PATROL, The, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the parties' motions in limine. Both sides have requested a hearing, but based on the parties' arguments and affidavit evidence, I conclude that a hearing is not necessary. Plaintiff Carla J. Schreiber claims that she was denied promotions and suffered other adverse employment actions on the basis of her sex and that she was retaliated against for engaging in protected activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Filing No. 24).

The State of Nebraska and the Nebraska State Patrol ("NSP") (hereafter collectively "Defendants") have filed a motion in limine to exclude the testimony of Plaintiff's proposed expert witness, Jose Soto, who is identified as having expertise in matters of personnel and affirmative action. (Filing No. 114). The Defendants contend that Soto's opinions are not relevant or reliable, and they do not constitute expert opinion under Federal Rule of Evidence 702. Schreiber also has filed a motion in limine to exclude the testimony of the Defendants' proposed expert witness, David Peterson, Ph.D., a statistician. Schreiber seeks to exclude Dr. Peterson on the basis that the data that he has relied upon are too limited, covering only the two years after Schreiber filed her charge of discrimination against the NSP. She argues that restricting the data to 2004-06, generates unreliable

opinions based on an incomplete analysis. Schreiber also seeks to exclude Dr. Peterson's testimony because Schreiber is unable to rebut it by analyzing the years prior to 2004, due to the Defendants' destruction of documents relating to the NSP's promotional decisions prior to 2004. Schreiber contends that the Defendants had an obligation to retain personnel records pursuant to statute, and that their failure to retain them justifies the sanction of preventing Dr. Peterson from testifying as to his analysis for 2004-2006.

For the reasons that follow, both motions will be granted.

## *Daubert* Standard

A witness qualified as an expert by knowledge, skill, experience, training, or education, may offer an opinion based on scientific, technical, or other specialized knowledge if it will assist the trier of fact. Fed.R.Evid. 702. Under Rule 702, the Court must consider whether (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. The Advisory Committee Notes to the 2000 Amendments to Rule 702, made in response to the *Daubert* decision, list other factors courts often consider when determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. Among these are (1) whether the research was conducted independent of the litigation or the opinions were developed expressly for purposes of the litigation, (2) whether the expert has extrapolated from an accepted practice to an unfounded conclusion, leaving an analytical gap, (3) whether the expert has adequately accounted for alternative explanations, at a minimum ruling out the most obvious alternative causes, (4) whether the expert has employed the same level of care and intellectual rigor in reaching the opinion as the expert would employ when working

outside the courtroom in the expert's field of expertise, and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert is offering.

To be admissible, expert testimony must be both relevant and reliable, and the trial court's unique role as "gatekeeper" affords the trial court broad discretion in determining whether these standards have been met.  *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999); *see also Wagner v. Hesston Corp.,* 450 F.3d 756, 758 (8th Cir. 2006).  The proponent of the expert testimony must prove its admissibility, that is, its relevance and reliability, by a preponderance of the evidence.  *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592.)  When dealing with the sufficiency of statistical evidence, the Eighth Circuit Court has stated:

> To be legally sufficient, the plaintiffs' statistical evidence "must show a disparity of treatment, eliminate the most common nondiscriminatory explanations of the disparity, and thus permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination." *Hervey v. Little Rock*, 787 F.2d 1223, 1228 (8th Cir. 1986) (quotation omitted).

*Morgan v. United Parcel Service of America, Inc.,* 380 F.3d 459, 463 - 464 (8th Cir. 2004).

**Jose Soto, J.D.**

Schreiber offers Soto as an expert qualified to offer testimony based on his educational background and professional experience as an affirmative action and personnel specialist.  Soto earned a bachelor of arts degree with emphasis in psychology and social sciences from the Intra-American University of Puerto Rico; took some graduate level courses in psychology; and earned a juris doctor degree from the University of

3

Nebraska at Lincoln in 1984. Soto has held the position of Vice President for Affirmative Action, Equity and Diversity for Southeast Community College in Lincoln, Nebraska, for approximately 15 years. In formulating his opinions, Soto has relied on documents provided to him by Schreiber's counsel, and he has referred to formulas adopted by the EEOC. (Soto's reports are located at Filing No. 115, Attachments 1 and 2.)

The Defendants seek to exclude Soto's opinions for several reasons. First, the Defendants contend that Schreiber is using Soto's testimony to advance a disparate impact theory. Soto's opinions include that the NSP's policy and procedures have an adverse impact on females. The Court has ruled that Schreiber may not proceed on a disparate impact theory of discrimination (Filing Nos. 101, 75), and expert evidence will not be allowed for that purpose. The admissibility issue remains, however, because statistical evidence also may be used to show pretext in disparate treatment cases, although "[g]eneralized statistics used to prove a particular intent must be scrutinized closely." *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1254 (8th Cir. 1981).

The Defendants contend that these opinions are not the type of expert opinion evidence contemplated by Rule 702 because they are unreliable, and, therefore, not relevant, and not helpful to the trier of fact. As I indicated in the Memorandum and Order denying the Defendants' motion for summary judgment, some of the underlying data extracted from the Omaha and Lincoln police departments may be probative of some fact at issue in this case. However, for reasons explained below, I conclude that the expert opinion evidence offered by Soto should be excluded under Rule 702 and *Daubert* and its progeny and Rule 702.

4

There is no doubt that Soto has analyzed certain information and statistics that have been made available to him through this case. Specifically, Soto has reviewed statistical information gathered from the Omaha and Lincoln Police Departments and a national survey in which the NSP participated in 1999 and 2002.  Soto has also reviewed the procedures used by the NSP in making promotional decisions.   He has formed opinions based his review of that information within the context of his professional experience. Soto's opinions include that female officers are under-represented and underutilized by the NSP; that the NSP has failed to avail itself of numerous opportunities to select for promotion women who were "arguably equally qualified, if not more qualified," than the males selected for those positions; that the NSP has failed to take affirmative action to remedy the significant under-utilization and under-representation of women within the sergeant and lieutenant ranks; and that the NSP's affirmative action efforts could have been "more aggressive."  He is of the opinion that "plausible and likely explanations" for the relatively low number of female NSP employees who have been promoted include 1) an historic and extant preference for males in leadership and command positions and 2) a selection process that is imbued with subjectivity that permits decision-makers to discriminate for unlawful reasons.   Soto also states that "the adverse actions the plaintiff is complaining about were more likely than not motivated by unlawful bias based on her gender."  (Filing Nos. 115, Attachments 1 and 2).

While Soto has earned a law degree and has more than 15 years of experience in the personnel field (which includes matters relating to affirmative action), I find that his educational and professional background do not qualify him to render expert opinion evidence in this case.  There is no evidence that he has engaged in scholarly research or

5

writing on the subject of affirmative action in the law enforcement arena. He has not been trained as a statistician. I find that his opinions do not adequately account for alternative explanations. I find that Soto's opinions are based, in part, on irrelevant considerations and insufficient data. For example, some of his opinions relate to recruitment of females into law enforcement, not promotional decisions. Recruitment is not material to this case. His analysis is not the product of recognized and respected methodologies, nor does it address or incorporate any measures of validity or accuracy. For example, he does not address whether chance played any role in any selection process for NSP promotions, and, at least initially, he ignored the impact of standard deviations on this type of statistical analysis. Soto offer his opinions "to a reasonable degree of certainty available in the professional practice of human resources and affirmative action," which does not reflect an area of expertise that is known for reaching reliable results for the types of opinions that Soto is offering.

If permitted, Soto would summarize the evidence in this case, which the jury can and should perform on its own, and Soto would render his personal opinion regarding the ultimate issue of whether NSP discriminated against Schreiber in the promotional process on the basis of her sex, a matter in the province of the jury. Soto's methodology and his opinions do not satisfy the *Daubert* standard. I find that Soto's testimony would not help the jury determine the outcome of any material fact at issue. For these reasons, I will grant the Defendants' motion in limine.

**David Peterson, Ph.D**

Schreiber seeks to exclude Dr. Peterson from testifying in this case because 1) his data are incomplete and insufficient; and 2) the Defendants have destroyed personnel

records relating to NSP's promotional decisions for all years prior to 2002, rendering her incapable of rebutting Dr. Peterson's opinions. She argues that Defendants' failure to maintain promotional employment records prior to 2002 constitutes intentional destruction of evidence, and that the appropriate sanction for this conduct is to exclude Dr. Peterson's testimony regarding promotions during 2004 to 2006.

The Defendants' two-page brief makes clear that the purpose of retaining Dr. Peterson was to "establish that Mr. Soto did not have sufficient data, did not present any comprehensive analysis that links Plaintiff's gender to those of any other Highway Patrol employee or to any of the promotion decisions being challenged by the Plaintiff." Defendants state that Dr. Peterson was retained to demonstrate that Soto "did not present any certifiable data to show that the Plaintiff had been discriminated against." (Filing No. 128).

The Defendants' brief does not respond to or rebut the Plaintiff's argument that the Defendants violated a duty to retain personnel records.[1] Because I have ruled that Soto will not be permitted to testify during this trial; because the Defendants concede that their purpose in retaining Dr. Peterson was to establish that Plaintiff's expert lacked sufficient underlying data to make a comprehensive analysis relevant to this case; and because the Defendants did not respond to the Plaintiff's argument that the Defendants had a duty to retain documents and information related to their promotional decisions and failed to do so, I conclude that Dr. Peterson should also be excluded from testifying at this trial.

---

[1] The document retention policy was signed by Colonel Thomas Nesbitt in 2003, and superseded a 1988 policy. (Filing No. 89, Attachment #7, Ex. 207). I did not find in the file a copy of the 1988 policy, which would have governed the retention of documents in 2000-2002.

As the Defendants have stressed, this is not a disparate impact case. The Plaintiff's motion to amend the Complaint to add such a claim was denied. "[A]llegations that an employer's general practices and procedures have an adverse effect on minority promotions, although highly relevant to disparate impact claims, cannot [solely] support a claim of discrimination based on a disparate treatment theory." *Cardenas v. AT&T Corp.*, 245 F.3d 994, 1000 (8th Cir. 2001). Schreiber's case will proceed to trial based on her claim of disparate treatment discrimination based on her gender and on her claim of retaliation in violation of federal law. For all these reasons,

IT IS ORDERED:

1. Defendants' Motion in Limine (Filing No. 114) is granted, and Jose Soto, J.D., is excluded from testifying at trial;

2. Plaintiff's Motion in Limine (Filing No. 124) is granted, and David Peterson, Ph.D., is excluded from testifying at trial; and

3. Because David I. Rosenbaum, Ph.D., was identified by Plaintiff as a rebuttal expert and Dr. Peterson has been excluded as an expert witness in this case, Dr. Rosenbaum will not be permitted to testify at this trial.

DATED this 23rd day of February, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge